UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PETER C. CASEY,**                                                    Chapter 13
    Debtor                                                            Case No. 08-11285-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the Debtor's objection to the proof of claim filed by Joanne Governor ("Governor") in the amount of $120,000. In her proof of claim, Governor asserted her claim was secured by a writ of attachment on property located at 117 Babcock Street, Quincy, Massachusetts. The Court conducted an evidentiary hearing with respect to the Debtor's objection on January 5, 2009 and January 12, 2009 at which Governor represented herself. Governor and the Debtor both testified and 29 exhibits were submitted into evidence.

    The issue presented is whether Governor sustained her burden of establishing the

1

amount of her claim for a domestic support obligation. *See* 11 U.S.C. § 101(14A).[1] The parties filed post-trial briefs. Governor filed an amended post-trial brief, which precipitated

---

[1] Section 101(14A) provides:

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

    (A) owed to or recoverable by--
        (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
        (ii) a governmental unit;
    (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
        (i) a separation agreement, divorce decree, or property settlement agreement;
        (ii) an order of a court of record; or
        (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

an objection by the Debtor. The Debtor argued, and the Court so finds, that Governor, through her amended post-trial brief, improperly submitted unsworn evidence to correct omissions at trial. The Court shall enter an order sustaining the Debtor's objection to portions of Governor's amended post-trial brief, as well as an order allowing Governor's claim in part.

## II. FACTS

The Debtor filed a Chapter 13 petition on February 27, 2008. He filed his Schedules of Assets and Liabilities and his Statement of Financial Affairs on March 31, 2008. On Schedule E-Creditors Holding Unsecured Priority Claims, he listed the Massachusetts Department of Revenue (the "DOR") as the holder of a claim in the amount of $9,844 for "child support arrears." On Schedule F-Current Expenditures of Individual Debtor, he listed a monthly payment of $645 for "[a]limony, maintenance, and support paid to others." The Debtor filed a Chapter 13 plan in which he proposed to pay all claims in full form the sale of his residential property located at 117 Babcock Street, Quincy, Massachusetts.

To implement his Chapter 13 plan, the Debtor filed a Motion for Authority to Sell Real Estate. In his motion, the Debtor represented that he had entered into a purchase and sale agreement to sell the Babcock Street property for $249,000. The Debtor disclosed that the property is encumbered by a first mortgage in the approximate amount of $170,000, as well as Governor's writ of attachment. On February 5, 2009, this Court entered an Order Regarding Debtor's Motion for Authority to Sell Real Estate at 117 Babcock Street, Quincy,

Massachusetts, permitting the closing agent to disburse sales proceeds to the holder of the first mortgage on the property and for for property taxes and water and sewer obligations. The remaining funds were to be held until such time as the Court determined the Debtor's objection to Governor's proof of claim.

Governor timely filed a proof of claim in the Debtor's Chapter 13 case. She represented that the basis for her claim was unpaid child support and that the amount of the claim was $120,000, secured by a writ of attachment in that amount, issued by the Massachusetts Trial Court, Probate and Family Court Department (the "Norfolk Probate Court")on November 17, 2006 in an action commenced by Governor on May 25, 2001.

The Debtor objected to Governor's claim stating that "at the time the attachment was issued, he did not owe any child support; he was not aware of the attachment; and on the date he filed his bankruptcy petition he owed Governor through DOR only $9,844.00, which he included in his plan." He added that "at most Governor has a secured claim for $9,844.00."

Governor responded the Debtor's objection, stating "[t]he unpaid child support, including medical benefits, in the amount of approximately $132,000, secured by the aforementioned judgment [sic], remains unpaid." She added that her claim was entitled to priority as a domestic support obligation, citing 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

At trial, Governor testified that she and the Debtor have two children. The Norfolk Probate Court issued Temporary Orders on a Complaint to Establish Paternity on March 16, 1994. The orders provided that the Debtor was the father of two minor children, that

4

Governor would have sole legal and physical custody; that the Debtor would have visitation rights, subject to certain specific conditions, that the Debtor was required to maintain full comprehensive health insurance for the children, until further order of the court, and that "while the plaintiff [Governor] provides transportation for visitation, defendant shall pay $1,312 per month child support."

In addition to the Debtor's obligation to maintain full comprehensive health insurance for the children, the Temporary Orders provided:

> The defendant shall be required to maintain full comprehensive health insurance for the mother for the next ninety (90) days; and thereafter he shall have no further obligation to provide health insurance for her. The mother shall be responsible for all ordinary and reasonable uninsured medical expenses of the children; and any extraordinary uninsured medical expenses for the children, as well as all uninsured dental expenses, shall be shared equally (50/50) by the parents.[2]

With respect to the Debtor's obligation to make monthly child support payments of $1,312, the order provided that "after defendant recovers a valid drivers [sic] license, and *if he shares equally in the transportation of the children for visitation*, defendant shall pay $1,100 per month child support." (emphasis supplied)  At the time of the March 16, 1994 Temporary Orders, the Debtor owed Governor $1,312 in child support arrears for the

---

[2] A prior Abuse Prevention Order under Mass. Gen. Laws ch. 209A referenced a monthly premium payment for medical and dental coverage for the children of $590 per month as well as the payment of a Boston Gas bill in the sum of $919.55. The Norfolk Probate Court, in issuing the Temporary Orders on March 16, 1994 stated: "[T]his court has today entered a comprehensive Domestic Relations Protective Order. A previous 209A Order from the Quincy District Court is agreed by both parties to be outdated and inaccurate due to subsequent developments, and both parties have assented to a request by this court to the Quincy District Court that said Quincy 209A be vacated."

month of February and $656 for the balance of the month of March. The Debtor admitted that the March 14, 1994 Temporary Orders governed monthly child support payments from February of 1994 to July of 2000 when Norfolk Probate Court ordered the Debtor to make child support payments directly to the DOR.

The Debtor provided a table in which he calculated the amount he owed Governor before the involvement of the DOR as follows:

| | |
|---|---|
| 2/94 | $1,312.00 |
| 3/94 | 656.00 |
| 4/94 - 12/94 (9 x 1,312.00) | 11,808.00 |
| 1/95 - 3/95 (3 x 1,312.00) | 3,963.00 |
| 4/95 - 12/95 (9 x 1,100.00) | 9,900.00 |
| 1/96 - 11/96 (11 x 1,100.00) | 12,100.00 |
| 12/96 (1 x 1,312.00) | 1,312.00 |
| 1/97 -12/97 (12 x1,312.00) | 15,744.00 |
| 1/98 -12/97 (12 x 1,312.00) | 15,744.00 |
| 1/99 - 12/99 (12 x 1,312.00) | 15,744.00 |
| 1/00 - 7/00 (7 x 1,312.00) | 9,184.00 |
| 78 months | $97,440.00 |

The Debtor testified that he had a driver's license for the period between April of 1995 and November of 1995 and was entitled to reduce the amount of support from $1,312 to $1,100 for 20 months. Governor disputed the Debtor's entitlement to the reduction. Governor claimed that the Debtor did not share equally in the transportation of the children for visitation. If the Court accepts her testimony, the Debtor would owe her an additional $4,240.00 (20 x $212). The Court finds that, although the Debtor established that he had a driver's license at the time, he failed to establish that he shared equally in the transportation of the children for visitation to and from Quincy from their home with their mother in Connecticut. The March 16, 1994 order, which established that the Debtor was

required to pay Governor $1,312, provided that the Debtor owed Governor $1,312 for the month of February and $656 for the balance of the month of March. The Court finds that the Debtor's calculation of what he was obligated to pay Governor is substantially correct but requires the addition of $4,420 to account for his improper reduction of his monthly obligation when he had a driver's license. Thus, the Debtor owed Governor $101,680 for the period from March of 1994 through July of 2000.[3]

As referenced above, on August 3, 2000, the Norfolk Probate Court entered an Order for Support, Health Insurance and Income Assignment requiring the Debtor to make child support payments in the amount of $1,312 per month directly to DOR. Governor submitted as an exhibit a "Child Support Enforcement System Financial Summary Report" prepared by the Commonwealth of Massachusetts. This report shows that the Debtor was required to pay $1,312.00 for 61 months beginning in August of 2000 and continuing through August of 2005. In September of 2005, he was required to pay $1,796.00 and, for the remaining months from October of 2005 through January of 2009, he was to pay $484 or $605 per month or $121 per week for 40 months. Based upon the credible evidence submitted, namely the Child Support Enforcement Division's Financial Summary Report,

---

[3] At trial, Governor calculated the amount of child support owed to her by multiplying $1,312 by 150 months for a total of $196,800. In her amended post-trial brief, however, she calculated the amount at $101,024. In addition to the $196,800, she claimed entitlement to the amount of outstanding gas bill from 1994, as well as reimbursement for medical bills, which she failed to quantify. She also claimed child support in the amount of $121 for 46 weeks, resulting in a total claim of $203,285.55, plus the amount outstanding from the Debtor's wage garnishments by the DOR.

the Court finds that the Debtor owed Governor $102,398 for the period between August 2000 and January 2009. Adding that sum to the amount owed from 1994 through July of 2000 ($101,680) results in a total obligation of $204,078.

Having established what the Debtor owed Governor, the Court next must determine what he paid her toward his child support obligations. Neither Governor nor the Debtor kept complete and organized records in the form of ledgers with evidence of payments or receipt of payments, such as all copies of checks, canceled checks, money orders, or other evidence of payment or receipt. The Debtor, however, kept better records of payments than Governor kept of receipts.

Governor testified that the Debtor paid her approximately $96,000, but that sum spanned both pre- and post-DOR involvement in the collection of child support payments. The Debtor submitted copies of canceled checks, money orders and deposit slips to establish how much he paid prior to DOR involvement. He also testified that he made cash payments to Governor, which she disputed. In a summary chart attached as Exhibit A to his Post-Trial Memorandum, as amended, he summarized various exhibits and his testimony to support his contention that he is entitled to a credit of $86,215.50 for the period from and including February 1994 through July 2000.

The Financial Summary Report provides the best evidence of what the Debtor paid for the post-August 2000 period and what his outstanding obligations are for that period. The Report shows total arrears of $10,201, plus interest of $2,981.28, for a total of $13,182.28. The penalty of $1,490.62 shown on the report is not payable to Governor as child support.

*See* Mass. Gen. Laws ch. 119A, § 6(b)(1) and Mass. Code Regs. 119A, § 6.1.

The amount of Governor's claim for child support hinges on the amount of payments made by the Debtor during the pre-August 2000 period. Governor admitted to receipt of $96,000 in payments, but she did not clearly specify the period for which she received those payments. As noted above, the Debtor submitted a list of payments for the period between March 16, 1994 and December 2, 2004 in the form of a summary chart attached as Exhibit A (amended) to his post-trial memorandum. Referencing the various exhibits, particularly Exhibit 15, which was a collection of copies of checks, money orders and receipts from the period in question, as well as cash payments, the Court finds that the Debtor made payments to Governor in amount of not less than $58,011. The Court rejects the Debtor's claim that he is entitled to a credit for cash payments as there was no evidence other than his testimony which the Court rejects in favor of Governor's testimony.

The Court also rejects evidence of payments in the form of money orders that do not specifically identify Governor or the children as recipients, as well as the Debtor's claim that the value of gifts for sailing lessons, stock and a computer should be credited to his child support payments. Thus, the Court finds that the Governor has a claim for child support payments in the amount of $43,669 ($101,680 - $58,011) for the period before July of 2000, plus a claim in the sum of the $13,182.28 pursuant to the Child Enforcement System Financial Summary Report prepared by the Commonwealth, for a total claim for child support of $56,851.28, excluding any entitlement to payments for health insurance

expenses for the children.

Governor's testimony with respect to her claim for health insurance payments was confusing and speculative. The Debtor maintained health insurance for the children at various times after 2000. He and Governor were required to share any extraordinary uninsured medical expenses, and Governor was responsible for all ordinary and reasonable uninsured medical expenses beginning in March of 1994. The Temporary Orders were silent about what was to happen if the Debtor failed to maintain full comprehensive health insurance for his children.

Governor submitted copies of six checks made payable to Blue Cross Blue Shield of Alabama in varying amounts, totaling $2,128. Additionally she submitted checks made payable to various doctors and pharmacies, as well as hospital bills sent to one of her children directly. Governor failed to submit competent evidence of the total amount to which she is entitled under the March 16, 1994 Temporary Orders for health insurance expenditures.

### III. APPLICABLE LAW

The law applicable to proofs of claim is well known. In In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2008), this Court stated:

> Pursuant to Fed. R. Bankr.P. 3001(f), "[a] proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim." *See* In re Long, 353 B.R. 1, 13 (Bankr. D. Mass. 2006). *See also* Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993). In order to rebut the prima facie evidence, the objecting party must produce "substantial evidence," and, if the objecting party produces substantial evidence in opposition to the proof of claim, rebutting the prima facie evidence, the burden shifts to the claimant to establish the validity of its

10

claim. Long, 353 B.R. at 13 (citations omitted).

393 B.R. at 269.   In Tracey v. United States (In re Tracey), 394 B.R. 635 (B.A.P. 1st Cir. 2008), the United States Bankruptcy Appellate Panel for the First Circuit elaborated:

> An objection does not overcome this presumption unless it has substantial merit. Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.), 993 F.2d 915, 925 (1st Cir.1993). "It is often said that the objector must produce evidence equal in force to the prima facie case." In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir.1992). If the objection contains such evidence, the claimant "is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence." In re Organogenesis, Inc., 316 B.R. 574, 583 (Bankr. D. Mass. 2004). Generally, a preponderance of the evidence is that evidence which is of greater weight or more convincing. Hale v. Dep't of Transp., Fed. Aviation Admin., 772 F.2d 882[, 885] (Fed.Cir.1985).

In re Tracey, 394 B.R. at 639(footnotes omitted).  *See also* In re Plourde, 397 B.R. 207 (Bankr. D.N.H. 2008).

A domestic support obligation, defined in 11 U.S.C. § 101(14A),[4] is accorded first priority status pursuant to 11 U.S.C. § 507(a), and excepted from discharge under 11 U.S.C. § 1328(a). There is no dispute that the Debtor's obligations to Governor are encompassed within the definition of a domestic support obligation.

Governor's proof of claim was properly and timely filed. Governor attached to her proof of claim a copy of the finding and order for approval of writ of attachment issued on November 17, 2006, as well as a copy or the writ attachment in the amount of $120,000. The Court further finds that, although Governor's proof of claim constituted prima facie evidence of its validity and amount, the Debtor successfully rebutted the amount, but not

---

[4] *See* note 1, *supra*.

the validity of the claim.

As discussed above, the Court finds that the Debtor owes Governor $56,851.28 for past due child support payments. Because the debt is excepted from discharge and because the Court finds that is more likely than not that the Debtor also owes Governor for health insurance payments which she made on behalf of the children, the Court's ruling is without prejudice to Governor's right to seek reimbursement from the Debtor in the Norfolk Probate Court for any health insurance obligations which he may have under the March 16, 1994 Temporary Orders, as well as any ongoing child support payments.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order sustaining the Debtor's Objection to Governor's proof of claim in part. Governor's claim shall be allowed as a secured claim in the amount of $56,851.28, subject to Governor's rights to seek further child support payments after the date of the Child Enforcement Division's Financial Summary Report, as well reimbursement for health care expenses under the March 16, 1994 Temporary Orders.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 19, 2009
cc: Ann Brennan, Esq., Joanne Governor, Carolyn Bankowski, Esq.